NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-839
consolidated with 11-1374

STATE OF LOUISIANA

VERSUS

K.W.T.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 34729-09
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

John F. DeRosier
District Attorney
Carla S. Sigler
Karen C. McLellan
Assistant District Attorneys
1020 Ryan Street
Lake Charles, Louisiana 70601
(337) 437-3400
Counsel for Appellee:
    State of Louisiana

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2806**
**Monroe, Louisiana  71207**
**(318) 387-6124**
**Counsel for Defendant/Appellant:**
  **K.W.T.**

**K.W.T.**
**In Proper Person**
**Raven 1- Right- Camp- D**
**Louisiana State Prison**
**Angola, Louisiana 70712**
**Defendant**

**KEATY, Judge.**

Defendant, K.W.T.,[1] was convicted by a jury of two counts of aggravated incest and one count of forcible rape. The State then filed a habitual offender bill, and after a hearing, Defendant was adjudicated a third felony offender. He was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence for each of his three convictions. Defendant now appeals his convictions and his sentences. For the following reasons, we affirm.

## PROCEDURAL HISTORY

On November 12, 2009, the Calcasieu Parish Grand Jury indicted Defendant, K.W.T., with two counts of aggravated incest and with one count of forcible rape under docket number 34729-09. Defendant pled not guilty at his December 7, 2009 arraignment.

Defendant filed a motion to cross-examine L.J., the victim in the instant case, about prior accusations she had made of sexual misconduct. Following a hearing, the trial court granted the State's counter-motion to preclude the defense from using L.J.'s prior accusations at trial. Defendant later filed a motion seeking to bar his sister, R.T., from testifying at trial and to gain permission to ask L.J. about her prior sexual history. After a hearing, the trial court denied Defendant's motion.

A three-day jury trial began on October 14, 2010, after which Defendant was found guilty as charged. Polling of the jury revealed a unanimous verdict. The State then filed a habitual offender bill under a separate docket number, 34489-10, asserting that Defendant was a third felony offender. At the conclusion of the habitual offender hearing, the trial court adjudicated Defendant a third felony offender. Defendant was sentenced to serve life imprisonment without benefit of

---

[1] In accordance with La.R.S. 46:1844(W), we use the initials of the parties, where necessary, to protect the identity of the victim.

probation, parole, or suspension of sentence for each of his three convictions. In appellate docket number 11-839, Defendant asserts the following errors: 1) the trial court violated his constitutional due process and confrontation rights by prohibiting him from introducing (a) evidence of prior accusations of sexual misconduct made by the victim in this matter and (b) evidence the victim was not a virgin prior to the alleged events; 2) the evidence adduced at trial was insufficient to support the convictions of two counts of aggravated incest and one count of forcible rape; 3) the trial court erred in denying eight challenges for cause during voir dire; 4) the trial court erred in denying his motion for mistrial made after the State elicited testimony which had been excluded by the trial court's ruling on a motion in limine; 5) his sentences of life without benefit of probation, parole, or suspension of sentence were excessive under the circumstances. In appellate docket number 11-1374, Defendant asserts that his sentences of life without benefit of probation, parole, or suspension of sentence were excessive under the circumstances. Upon motion of counsel, this court consolidated Defendant's appeals for disposition purposes.

**DISCUSSION**

## *I. Trial Testimony*

The victim, L.J., testified that she grew up living with her mother, A.J. She did not see her father, Defendant, much during that time as he only visited about once every two years. When she was sixteen, L.J. saw her father while she was working at a fast food restaurant. She was glad to see Defendant, and, thereafter, Defendant visited her at home a few times and took her out to eat. L.J. believed Defendant when he told her that he had changed, and she wanted to experience a father-daughter relationship with him like her friends had with their fathers.

2

L.J. recalled that in 2008, when she was still sixteen years old, she stayed with Defendant during her Christmas break. Defendant lived in a two-bedroom house with his mother and L.J.'s two half-brothers, A.T. and D.T.[2] During their December 2008 visit, Defendant told her that he wanted to be her best friend and lover. He complimented her often, telling her that she was fine, that she looked good, and that he had a sexy daughter. Defendant also told her details about his sex life. L.J. informed Defendant that she did not find him attractive because she saw him as her father. Although those conversations made her uncomfortable around Defendant, she initially did not tell anyone about them.

L.J. stated that Defendant also touched her many times in ways that made her uncomfortable. The first time happened when she was sleeping. When she awoke, Defendant told her he needed to tell her something, and he made her agree to keep what he was going to say between them. Defendant then told her he had been inside of her the night before. She had not felt anything and thought Defendant might have been joking because he had been drinking beer.

L.J. related that the next incident occurred late one night while she was in Defendant's room watching television with her half-brother, D.T. She was lying on the bed on her stomach when Defendant entered the room. Defendant got on her back and forced himself into her, stating, "It's just gonna be for a little while." L.J. was wearing a long shirt and some shorts, and Defendant pulled her shorts to the side before inserting his penis into her. L.J. knew it was his penis because he had his hands next to hers. L.J. tried to push Defendant away, but she was unsuccessful. D.T. tried to see what was going on, but Defendant made him turn his head. After Defendant ejaculated inside of her, he left the room. When she

_____

[2]Both A.T. and D.T. were deceased at the time of trial. A.T. died on December 23, 2008, after having been severely burned in a kitchen fire at Defendant's house; he was eighteen at the time. D.T. died at the age of four at some point after the events at issue, but L.J. could not recall precisely when his death had occurred.

heard Defendant leave the house, she then went to the bathroom and cried like she had done every time he sexually abused her. L.J. testified that it hurt, and she felt disgusted. L.J. reported that the next incident happened in nearly the same manner as the second. She was lying down with D.T. and trying to put him to sleep when Defendant crawled on top of her, removed her shorts, and pushed his penis inside of her.

L.J. stated that on several other occasions, Defendant touched her private parts with his hands and his mouth. The incidents of sexual contact always occurred in Defendant's bedroom, and he always threatened that "something" would happen to her if she ever told anyone. L.J. maintained that Defendant never used a condom during his sexual activities with her. She stated that she asked Defendant if he wanted her to be pregnant, and he responded in the affirmative, saying that he wanted to create a bond with her that would not be broken even if they fought and never saw one another again.

At the end of December 2008 or in January 2009, L.J.'s uncle, T.W., asked her if Defendant had ever touched her. Because of Defendant's threats, she initially denied that her father had been abusing her, but, after some prodding, she told T.W. that Defendant had been raping her since she began staying with him that Christmas. L.J. did not want T.W. to tell anyone because she feared what would happen if Defendant found out.

T.W. was Defendant's half-brother. He testified that A.J. asked him to allow L.J. to spend time with his family since it included a mother and a father. L.J. spent time at both T.W.'s house and Defendant's house in December 2008. From what T.W. initially observed, the relationship between L.J. and Defendant seemed fine. Defendant appeared to be acting as a father figure to his children. T.W. recalled that when he picked up L.J. from Defendant's house around 1:30 or 2:00

4

a.m. on January 23, 2009, "she smelled like she was having sex." Because Defendant was the only person she had been around, T.W. asked L.J. if her father had touched her. He asked her three times before she responded that her father had not been touching her, but she asked T.W. to check on Defendant because he had been cutting himself. T.W. visited Defendant and saw that he had self-inflicted cut marks on his arm. After questioning L.J. again the next night and receiving no response, T.W. apologized and told L.J. that he would not ask her anymore questions. At that point, L.J. told him that Defendant had been having sex with her. L.J. made him promise not to tell anyone, but T.W. told his wife because they had a teenage daughter. Two days later, T.W. told A.J. that L.J. had confided that Defendant was having a sexual relationship with her. T.W. denied that he and L.J. made up the allegations against Defendant. He further denied that the accusations were motivated by a desire to "get at" Defendant.[3]

A.J., L.J.'s mother, testified that L.J. was distraught when she found out that A.J. had been told what Defendant had done to her. She explained that L.J. was scared and crying and that she refused to leave her room. A.J. contacted her minister, Corporal Louis Guy, who also worked in law enforcement. Corporal Guy referred her to Detective Mike Primeaux. A.J. denied colluding with T.W. to bring false charges against Defendant.

Corporal Guy, a school resource officer with the Calcasieu Parish Sheriff's Office, testified that he knew A.J. and L.J. because they all attended the same church.[4] When A.J. first mentioned the allegations against Defendant, Corporal

---

[3] Although not addressed in detail, the testimony revealed that Defendant and T.W.'s wife had engaged in a sexual relationship in the past.

[4] Corporal Guy stated that he was also a minister, but he was not employed as such at the time of trial.

Guy informed her that he had to report it. Corporal Guy then reported the matter to Lieutenant Elizabeth Zaunbrecher, who ran the Sex Crimes Unit.

Detective Mike Primeaux was assigned to the Sex Crimes Unit of the Calcasieu Parish Sheriff's Office. He testified that after being notified of the matter, he and his trainee, Detective Allison Rosteet, met Corporal Guy at L.J.'s home. When he attempted to speak with L.J., she was very emotional, so Detective Primeaux asked if she would be more comfortable discussing the matter with a female officer. Detective Rosteet then interviewed L.J. in private. Detective Primeaux arranged for L.J. to be interviewed by the Child Advocacy Center and examined by a doctor. He stated that he had reviewed the various statements given by L.J. in this matter and found that "she was very consistent in her story."

Dr. Scott Bergstedt was accepted as an expert in the field of forensic examination of child sexual abuse victims. When Dr. Bergstedt examined her on April 24, 2009, L.J. related that Defendant, her biological father, had sexual relations with her when she was sixteen in 2008 until the early part of January 2009. L.J. reported that, about once a week, Defendant performed oral sex on her and touched her vaginal area with his hand and penis. She recalled that, on one occasion, her father used a vibrator on her. L.J. said that it hurt, that Defendant never used lubricant, and that Defendant ejaculated. L.J. stated that Defendant told her something would happen to her if she reported the abuse.

Dr. Bergstedt's physical examination of L.J. revealed that she had "hymenal remnants," which was evidence of vaginal penetration. Dr. Bergstedt did not collect DNA evidence from L.J. because his exam was done beyond seventy-two hours from the alleged abuse.

Defendant took the stand to testify in support of his defense. He denied ever touching T.L. inappropriately or ever having sexual feelings or thoughts about her. He said he loved L.J. and had never touched her inappropriately. He regretted not acting like a father to L.J. and not being involved in her life as she grew up.

Defendant confirmed that L.J. stayed with him from December 19 to December 21, 2008. Defendant said that the funeral for his son, A.T., was on January 3, 2009, and he felt hurt because he was accused of having sex with his daughter during the time he was grieving for A.T. Defendant testified that when L.J. next spent the night at his house on January 9, 2009, he promised her that he was not going away again because he did not want to lose their father-daughter relationship.

Defendant next saw L.J. on January 23, 2009. L.J. was at T.W.'s house and Defendant spoke to T.W.'s wife on the phone and asked her to have L.J. call him. When L.J. did not return his call, he became angry and thought his family was playing games with him. Defendant called T.W.'s house again, and when T.W.'s wife hung up on him, Defendant called back and left nasty messages on the answering machine about his prior sexual relationship with T.W.'s wife. Later that night, Defendant heard a loud bang on his door. When he answered, L.J. charged into the house, upset about the voice messages, and they argued. Defendant stated that he was angry with L.J. because she was taking T.W.'s side, so he put her out of his house and told her not to return. He admitted that later that night, he cut his wrist with a razor because he missed A.T. and was upset about his argument with L.J.

## II.  Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record.  After a thorough review, we have found no errors patent.

## III.  Sufficiency of the Evidence[5]

"The testimony of a sexual assault victim alone is sufficient to convict the defendant.  Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant."  *State v. H.L.J.*, 08-1070, p. 18 (La.App. 3 Cir. 4/1/09), 6 So.3d 997, 1008 (quoting *State v. Richard*, 39,705, pp. 4-5 (La.App. 2 Cir. 5/11/05), 902 So.2d 1271, 1274, *writ denied*, 05-1713 (La. 2/10/06), 924 So.2d 161 (citations omitted)).

> [The supreme court has] repeatedly cautioned that due process, rational fact finder test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict.  A reviewing court may intrude on the plenary discretion of the fact finder "only to the extent necessary to guarantee the fundamental protection of due process of law."  *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988)(footnote and citation omitted).

*State v. Calloway*, 07-2306, p. 10 (La. 1/21/09), 1 So.3d 417, 422 (citation omitted).

"The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness[.]"  *State v. Higgins*, 03-1980, p. 17 (La. 4/1/05), 898 So.2d 1219, 1232, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182 (2005).  "Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence."

---

[5]"When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence."  *State v. Hearold*, 603 So.2d 731, 734 (La.1992).

*State v. Marshall*, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369, *cert. denied*, 552 U.S. 905, 128 S.Ct. 239 (2007).

Defendant argues that "[t]he evidence adduced at trial was insufficient to support the convictions of two counts of aggravated incest and one count of forcible rape." He complains that, other than L.J.'s testimony, the State introduced no direct evidence that inappropriate contact occurred. Defendant protests that T.W.'s testimony showed that he did not witness any such contact and that T.W. had a motive to lie because Defendant once had sex with T.W.'s wife. Defendant adds that L.J.'s mother, A.J., did not present direct evidence of inappropriate conduct and, in fact, did not suspect anything until T.W. "put the idea into her head." Defendant also protests that the remaining witnesses, two law enforcement officers and Dr. Bergstedt, only testified about what they had been told. Defendant asks this court to believe his account of events, which included a clear timeline of events, over the less specific and allegedly less credible testimony of the victim, L.J.

The State counters "that the defendant's convictions are fully supported by the record evidence, and the factfinder's determinations were inherently rational. Moreover, the State met its burden of proof beyond a reasonable doubt." The State asserts that the victim's "testimony was compelling, and established the offenses in question." The State submits that the victim's inability to recall a more precise time frame for the offenses and surrounding events does not mean that the victim was not credible. Finally, it submits that the testimony of one witness is sufficient to establish the elements of a sexual offense.

Examination of Defendant's arguments reveals that he does not assert that L.J.'s testimony did not satisfy the elements of the charged offenses. Instead, he argues that the State's evidence was not believable because L.J. was not credible.

The record shows that the jury was allowed to hear and consider the evidence presented by the defense, including Defendant's allegations that T.W. and L.J. had motives to bring false accusations against him. The jury had the information it needed to compare Defendant's detailed timeline to L.J.'s temporally vague account of events. The jurors were also able to consider and weigh the importance of L.J.'s failure to immediately report the inappropriate conduct against her desire to maintain a relationship with Defendant. Furthermore, the defense had the opportunity at trial to point out any major inconsistencies between the various statements given by L.J. to law enforcement, the examining doctor, and the advocacy center; however, no major inconsistencies were revealed to the jury. In fact, Detective Primeaux specifically testified that although L.J. might have added or left out details from one statement to another, her statements were consistent overall.

After considering the evidence and argument presented, the jury unanimously chose to convict Defendant of all three charges. A review of the record does not reveal that the jury's credibility determinations were contrary to the evidence. The State presented evidence that was more than sufficient to support all of Defendant's convictions. This assignment of error lacks merit.

## IV. *Defendant's Constitutional Rights of Due Process and Confrontation*

Defendant asserts that the trial court violated his constitutional due process and confrontation rights by prohibiting him from introducing evidence that: 1) L.J. was not a virgin prior to the alleged events; and 2) that L.J. had made prior accusations of sexual misconduct. Defendant advances that being barred from introducing this evidence at trial violated his Sixth Amendment right to confrontation and his Fourteenth Amendment right to due process.

Defendant alleges that the trial court misapplied the "rape shield" statute and that he should have been allowed to ask the victim if she had sex with anyone other than Defendant. He complains that, without evidence to the contrary, the jury could have thought that L.J. was a virgin prior to the alleged intercourse she had with Defendant. Defendant posits that Dr. Bergstedt's testimony that L.J. was not a virgin was irrelevant and prejudicial because he was not allowed to question L.J. about her sexual history.

Defendant claims that he also should have been allowed to question L.J. about accusations of sexual misconduct she previously made against other individuals. He contends that the questions would have been asked for the purpose of impeaching L.J.'s credibility and not for the purpose of showing that she acted in accordance with any particular character trait. Defendant posits that none of L.J.'s prior accusations of sexual misconduct (two allegations of forcible rape and one allegation of inappropriate touching) resulted in the prosecution of the person accused; neither L.J. nor her family pursued prosecution of those accused or followed up with the police after making the initial reports. Defendant insists, therefore, that reasonable jurors could have found that L.J.'s prior complaints were false.

The State responds that salacious and insulting questions regarding the victim's sexual history are precisely what the rape shield law was designed to prevent. It provides that a defendant is only allowed to ask about the victim's sexual history during the seventy-two-hour time period surrounding the offense, and the questions must be limited to proving a defense that the defendant was not the source of the victim's injuries. See La.Code Evid. art. 412(B)(1). Finally, the State submits that defendants are prohibited from asking victims about their chastity. *See, e.g., State v. Williams*, 05-1560 (La. 4/24/06), 927 So.2d 266.

11

In this case, Defendant failed to file a rape shield motion within the delays set forth by La.Code Evid. art. 412. The State submits that even though defense counsel enrolled after the La.Code Crim.P. art. 521 time limits had lapsed, he had no credible reason for waiting until the eve of trial to file his motion.

A. L.J.'s Prior Sexual History

On October 8, 2010, Defendant filed a motion seeking permission to cross-examine L.J. about her prior sexual conduct. In the motion, the defense gave notice that it intended to ask L.J. whether she had ever had sex prior to the dates of the charged offenses. Defendant maintained that the question would not be presented to impugn the victim's chastity but to counter the misleading testimony of Dr. Bergstedt.

On October 12, 2010, the State filed an opposition to Defendant's motion, arguing that inquiry into L.J.'s sexual history was prohibited by the rape shield law and that the status of L.J.'s virginity at the time of the offense was irrelevant. The record shows that the trial court conducted a hearing on the admissibility of L.J.'s sexual history prior to voir dire on October 13, 2010. After considering the argument presented by counsel, the trial court denied the motion.

The admissibility of the evidence concerning L.J.'s sexual history is governed by La.Code Evid. art. 412, which provided, in pertinent part:

> **A. Opinion and reputation evidence.** When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.

> **B. Other evidence; exceptions.** When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:

> (1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a

12

period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or

(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.

The article specifies that an accused who wants to offer evidence of the victim's past sexual behavior must file a motion to offer such evidence within the time allowed for filing pretrial motions. La.Code Evid. art. 412(D). Under La.Code Crim.P. art. 521, pretrial motions should be filed within fifteen days of arraignment, "unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate. Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions."

This court has previously discussed the implications of La.Code Evid. art. 412 as it applies to the time for filing and as it applies to a victim's sexual history:

> In the present case, the defendant waited until after jury selection and before opening statements to file a motion concerning the victim's prior sexual activities. This motion was untimely and even though the court and the prosecution allowed the defendant to present evidence and argument on his motion, the issue of untimeliness was not waived. In the recent United States Supreme Court case of *Michigan v. Lucas*, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), the United States Supreme Court upheld the notice and hearing requirement of the Michigan rape shield statute. In upholding the requirement that a defendant must give notice and submit to a hearing if he wished to introduce evidence of a rape victim's prior sexual relationships, the United States Supreme Court noted that to the extent that a rape shield statute operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished, but this does not necessarily render the statute unconstitutional. *Michigan v. Lucas*, 500 U.S. at 148, 111 S.Ct. at 1746. . . .
>
> In *State v. Lanerie*, 527 So.2d 1146 (La.App. 3d Cir.1988), a case decided under former La.R.S. 15:498, the defendant attempted to introduce evidence that another person had engaged in sexual relations with the rape victim in order to raise the defense that the

defendant was introduced by this other person to the victim for the purpose of "further sexual adventure." In upholding the trial court's decision to exclude this evidence, this court noticed that only when the evidence shielded by this statute is particularly relevant to a defendant's guilt or innocence may the defendant's right to set forth a defense override the prohibition in the rape shield statute. In *Lanerie*, this court determined that there was little relevancy between the evidence which the defendant was attempting to introduce and the issue of whether or not the defendant had engaged in unconsented sexual intercourse with the victim.

In *State v. Blue*, 591 So.2d 1173 (La.App. 1st Cir. 1991), it was alleged by the defendant that the young victim of the defendant's crime had previously been molested by another man. During cross-examination of the victim's mother, defense counsel tried to ask if the victim had ever told her mother she had been molested by another man. The prosecution objected and, relying upon Article 412, the trial court ruled that this evidence was inadmissible. Even though the defendant specifically noted that he was not introducing the evidence to impeach the victim's general reputation for chastity, but only to explain that someone other than the defendant had molested her in the past and therefore the young victim was able to describe the act of molestation from the previous act of molestation, the first circuit ruled that it was correct that the alleged prior acts of molestation of the victim were irrelevant and inadmissible in the present case. *State v. Blue*, 591 So.2d at 1177.

. . . .

In the present case, the defendant attempted to argue that the medical records from Briarwood Hospital establish that the young victim already had inappropriate knowledge of certain sexual activities in March of 1988, and that this knowledge and the alleged sexual abuse was possibly a result of the victim's biological father or uncle molesting her, and not the defendant.

The trial court denied the defendant's motion, citing a problem with relevancy. . . . Even if the defendant had timely filed his motion pursuant to article 412 of the Louisiana Code of Evidence, the trial court could have denied this motion on the merits finding that the timing of the victim's hospitalization and the timing of the defendant becoming a member of her family raised the probability that it was the defendant who committed these crimes upon the victim, and further that the victim had not been associated with her biological father or any other male members of her family since she was approximately two years of age.

*State v. Billings*, 93-1542, pp. 2-5 (La.App. 3 Cir. 5/4/94), 640 So.2d 500, 501-02,

*writ denied*, 94-1437 (La. 10/7/94), 644 So.2d 631.

14

Defendant was arraigned on December 7, 2009, and Defendant did not file a motion to question L.J. about her sexual history until October 2010. Therefore, Defendant's motion was untimely. In addition, Defendant's motion did not contain an explanation for the delay in filing, an allegation that the delay was through no fault of Defendant, or a statement that the defense was unaware of the other sexual history. Moreover, under the plain language of La.Code Evid. art. 412, the evidence Defendant sought to introduce regarding L.J.'s sexual history is inadmissible as the evidence does not fit within either of the exceptions set forth in La.Code Evid. art. 412. Accordingly, Defendant's argument that he should have been allowed to ask L.J. about her sexual history is without merit.

B. L.J.'s Prior Allegations of Sexual Misconduct

Examination of the record shows that Defendant filed his motion to question L.J. about her prior accusations of sexual misconduct on March 3, 2010. Defendant alleged that L.J. had previously accused her cousin, B.T.,[6] and another man of raping her in December 2008. Defendant argued that the evidence was relevant to prove the source of any sexual abuse revealed by the evidence and because L.J.'s "prior accusations of rape go directly to the defense theory that the victim makes up rape allegations as part of a modus operandi to hurt men." Defendant's motion did not allege that the prior allegations were false.

On March 18, 2010, the trial court conducted a hearing on Defendant's motion to cross-examine L.J. regarding her prior allegations of sexual misconduct. The State presented the testimonies of the following witnesses: R.T., the sister of Defendant and L.J.'s aunt; Detective Justin Abshire; Detective Kathy LeBlanc; Detective David Burnett; A.J., L.J.'s mother; B.A., L.J.'s stepbrother; and L.J. Detective Primeaux, Detective Rosteet, and T.W. were also called to testify. While

---

[6]B.T. is the son of R.T.

15

they had no information about L.J.'s prior allegations of sexual misconduct, they did testify about the facts of the instant matter.[7]

After considering the evidence and argument presented, the trial court granted the State's motion in limine to prohibit the defense from inquiring into the victim's prior accusations of sexual misconduct.

The supreme court has held that La.Code Evid. art. 412 does not apply to cases wherein the defense seeks to introduce prior false allegations of sexual misconduct for purposes of discrediting the victim. *See State v. Smith*, 98-2045, (La. 9/8/99), 743 So.2d 199 (where the defendant presented evidence sufficient to allow reasonable jurors to conclude that the victim made false allegations of sexual molestation in the past, that evidence directly addressed the victim's credibility and could have been admitted once the trial court made a determination that the evidence met all other standards for admissibility).

> In [*State v. ]Wallace*, [00-1745, (La.App. 5 Cir. 5/16/01), 788 So.2d 578, *writ denied*, 01-1849 (La. 5/24/02), 816 So.2d 297,] however, this Court rejected the defendants prior false allegation argument because [t]he defendants mere assertion that the alleged statement was made and that it was false does not satisfy the *Smith* test. Consequently, it is no abuse of discretion for a court to exclude evidence of prior false allegations of sexual misconduct when that evidence is based on the mere assertion of the defendant.

*State v. Dixon*, 07-915, pp. 14-15 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 155-56, *writ denied*, 08-987 (La. 1/30/09), 999 So.2d 745 (footnotes omitted).

Testimony at the March 18, 2010 hearing on Defendant's motion indicated that in 2005, when L.J. was thirteen years old, A.J. contacted the Calcasieu Parish Sheriff's Office with a complaint J.S., the twenty-five year old uncle of one of L.J.'s half-siblings, had inappropriately touched L.J. Testimony also revealed that

---

[7]Detective Rosteet was questioned regarding a police report from a 2008 complaint of rape made by L.J. regarding a D.L. She initially had no recall of that incident, but after being shown the report, she recalled taking information from L.J. and her mother at a hospital. She was not the investigative officer on that incident.

L.J. accused a juvenile named D.L. of raping her in the fall of 2008. Defendant presented no evidence at the hearing that the allegations against J.S. and D.L. were false. Thus, reasonable jurors could not find, based on the evidence presented by Defendant, that the victim made prior false accusations toward J.S. and D.L.

In reference to B.T., the only evidence presented at the hearing to support a finding that L.J.'s accusation against him was false was testimony by third parties that B.T. passed a polygraph during the investigation of the offense. However, B.T.'s alleged polygraph results were counterbalanced by the fact that no one could testify as to what questions were asked during the test, by the fact that L.J. was not subjected to a polygraph in reference to that allegation, by the investigating officer's belief that L.J. was telling the truth, and by the fact that a biological sample was taken from L.J.'s thigh during the SANE exam. Notably, the swab was not analyzed to either include or exclude B.T. as a contributor, Defendant did not call B.T. to testify at the hearing, and the defense failed to call an expert to testify concerning the implications of the polygraph results.

Considering the forgoing, we conclude that the trial court did not abuse its discretion in finding that a reasonable jury could not have found that the allegations against B.T. were false.

### V.  Defendant's Challenges for Cause

Defendant contends that the trial court erred in denying eight of its challenges for cause. The defense used all twelve of its peremptory challenges during voir dire. The trial court denied the defense's challenges for cause regarding jurors Mike Callahan, Carla Hymel, Jeanette Moss, Kenneth Prejean, Albert Hooper, Stacy Wheat, Stacie Ardoin, and Michael Heath. The State contends that the trial court properly denied Defendant's challenges for cause.

The state or the defendant may challenge a juror for cause on the ground that:

(1) The juror lacks a qualification required by law;

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court; or

(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

La.Code Crim.P. art. 797.

The second circuit has discussed the standard for reviewing a trial court's ruling on a challenge for cause:

> The trial judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse of discretion or a clear showing of error. *State v. Sugar*, 408 So.2d 1329 (La.1982). If a prospective juror is able, after examination by defense counsel, to declare to the court's reasonable satisfaction that they are able to render an impartial verdict according to the law and the evidence, it would be the trial court's duty to deny a challenge for cause. *State v. Claiborne*, 397 So.2d 486 (La.1981). The law is clear that a relationship between the prospective juror and the participants is not necessarily a disqualifying fact. The existence of a relationship, even one of blood or marriage, is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. *State v. Peterson*, 446 So.2d 815 (La.App.2d Cir.1984).

*State v. Fairley*, 25,951, p. 3 (La.App. 2 Cir. 5/4/94), 645 So.2d 213, 216 (*on reh'g)*, *writ denied*, 94-1940 (La. 11/11/94), 645 So.2d 1152, *and writ denied*, 94-2909 (La. 3/24/95), 651 So.2d 287.

The Louisiana Supreme Court has discussed the ramifications of an erroneous denial of a challenge for cause during voir dire when a defendant, as in the instant case, has utilized all of his peremptory challenges:

> Louisiana Constitution article I, § 17 guarantees to a defendant the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. . . . When a defendant uses all twelve of his peremptory challenges, an erroneous ruling of a trial court on a challenge for cause that results in depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and a defendant has exhausted his peremptory challenges. Therefore, to establish reversible error warranting reversal of a conviction and sentence, defendant need only demonstrate (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.

*State v. Juniors*, 03-2425, pp. 7-8 (La. 6/29/05), 915 So.2d 291, 304-05, *cert. denied*, 547 U.S. 1115, 126 S.Ct. 1940 (2006) (citations omitted). However, a defendant is not allowed to appeal the ruling on a challenge for cause unless he objected at the time of the ruling and set forth specific grounds for his objection: "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection." La.Code Crim.P. art. 800(A). Even if a defendant has used all of his peremptory challenges, he must still comply with La.Code Crim.P. art. 800, which requires the defendant to object to the trial court's ruling. *Fairley*, 645 So.2d 213.[8]

---

[8]In *Fairley*, the second circuit discussed whether there had been an objection sufficient to satisfy La.Code Crim.P. art. 800. *Fairley*, 645 So.2d at 219. Citing *State v. Vanderpool*, 493 So.2d 574 (La.1986), the *Fairley* court determined the record showed an objection sufficient to allow a merit review of the defendant's challenge for cause. *Fairley*, 645 So.2d at 219.

In *Vanderpool*, the supreme court held that there had been a sufficient objection because the defense challenged a juror for cause a second time on the same basis as it had originally urged after the district court denied the first challenge for cause. *Fairley*, 645 So.2d at 219. In *Fairley*, the attorney challenged a potential juror for cause a second time on a different basis after the trial court denied the original challenge for cause. *Id.*

A.  Mr. Callahan, Ms. Hymel, Ms. Moss, Mr. Prejean, Mr. Hooper, and Ms. Wheat

Defendant argues that Mr. Callahan should have been dismissed for cause because he had a personal relationship with Detective Mike Primeaux and because his two nieces had been molested five years before Defendant's trial.  Although he believed he could be fair and impartial, Mr. Callahan admitted that the incident with his nieces would be problematic for him.  Defendant contends that, despite Mr. Callahan's assurances otherwise, Mr. Callahan's disgust and revulsion over the molestation of his nieces prevented him from being fair and impartial.

In challenging Mr. Callahan for cause, defense counsel argued that his body language and his answers to questions during voir dire indicated "that he may be looking for someone to take out his own frustrations on."  While the trial court noted Defendant's concerns, it denied the challenge for cause.

Defendant challenged Ms. Hymel, Ms. Moss, and Mr. Prejean for cause on the ground that they had all been victims of burglary.  Defendant urged that this would be a conflict if the State cross-examined Defendant about his prior convictions.  Defense counsel did not want to question the potential jurors about any prejudice arising from their respective burglaries because it would "ring the bell."  When the trial court informed him that it would not strike them on the grounds urged, defense counsel said, "Okay," and did not object.

During voir dire, the defense challenged Mr. Hooper for cause on the basis that Defendant claimed to know Mr. Hooper.  According to Defendant, he and Mr. Hooper had adversarial interactions in junior high school, so there was a chance that Mr. Hooper was being less than candid.  Defense counsel admitted that

Both *Fairley* and *Vanderpool* are distinguishable from the instant situation.  In the current case, the defense neither objected to nor challenged any of the jurors for cause a second time after the trial court denied the initial challenges for cause.  Therefore, except for the issues presented herein involving Ms. Ardoin and Mr. Heath, the provisions of La.Code Crim.P. art. 800 bar review of the claims made in this assignment of error.

Mr. Hooper did not seem to be disingenuous. When the trial court denied the challenge for cause, defense counsel, once again, responded, "Okay," and did not object on the record.

Defendant challenged Ms. Wheat for cause on the basis of her friendship with a Ms. DeRosier who worked in the district attorney's office. Upon finding that the women were not close enough to impair Ms. Wheat's impartiality, the trial court denied the challenge for cause.

Defendant's assignment of error does not reference a page number in the record addressing a relationship between the potential juror, Mr. Callahan, and Detective Primeaux. Accordingly, Defendant's claim that Mr. Callahan had a personal relationship with Detective Primeaux will not be considered.[9]

When the trial court denied his challenges for cause with regard to potential jurors Mr. Callahan, Ms. Hymel, Ms. Moss, Mr. Prejean, Mr. Hooper, and Ms. Wheat, Defendant did not object to the trial court's ruling at the time of the decision. In addition, Defendant's appellate brief does not list a record page reference number to any such objection made at a later time. Pursuant to La.Code Crim.P. art. 800(A), we will not consider the portions of Defendant's assignment of error related to the aforementioned jurors.

## B. Ms. Ardoin

Defendant argues that Ms. Ardoin also should have been dismissed for cause because she had known Detective Primeaux since she was sixteen and because her husband worked with Detective Primeaux at the sheriff's office and thought he was

_____

[9]Uniform Rules—Courts of Appeal, Rule 2–12.4 provides, in pertinent part:

> The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.

21

a good cop. Defendant also challenged Ms. Ardoin for cause because she was familiar with Dr. Bergstedt as she and her daughter saw him as their obstetrician-gynecologist. In addition, Dr. Bergstedt had delivered Ms. Ardoin's son and had performed surgical procedures on her.

Although conceding that, individually, these facts would not be sufficient to support a dismissal for cause, Defendant maintains that, when all of these factors are considered together, Ms. Ardoin should have been disqualified for cause from serving as a juror in this case.[10] The State counters that Ms. Ardoin's responses "clearly reveal her ability to remain fair and impartial."

When the trial court asked whether Ms. Ardoin would be more inclined to believe something that Detective Primeaux testified to in court, she replied that she would listen and make her own judgment. When the trial court asked if she could do the same with Dr. Bergstedt, Ms. Ardoin answered, "Absolutely." The trial court denied the challenge of Ms. Ardoin for cause, but stated that the decision had been a close one. Afterward, although no objection by defense counsel appears in the transcript, the trial court said, "The objection is noted."

Under the plain language of La.Code Crim.P. art. 797(3), a potential juror's relationship is basis for a cause challenge only when the relationship is with the defendant, the victim, the prosecuting attorney, or defense counsel. Defendant did not allege that Ms. Ardoin had a relationship with any of those people. However, this court has expanded the "influence" analysis, as opposed to the bias analysis set forth in La.Code Crim.P. art. 797(2), to a prospective juror's relationship with any of the witnesses testifying at trial. *See State v. Fussell*, 06-324 (La.App. 3 Cir.

---

[10]In his brief to this court, Defendant also argued that Ms. Ardoin should have been dismissed for cause because her daughter was the same age as the victim in the instant case; therefore, Ms. Ardoin's maternal instinct would have prevented her from being a fair and impartial juror. However, as this was not a reason urged for the challenge made during voir dire, it cannot now be considered on appeal. *See* La.Code Crim.P. art. 841.

22

9/27/06), 941 So.2d 109, *reversed, in part, on other grounds*, 06-2595 (La. 1/16/08), 974 So.2d 1223 (discussing whether the evidence showed that the prospective jurors' relationships with witnesses would have influenced the prospective jurors).

There is no evidence on the record showing that Ms. Ardoin was influenced by her relationships with Detective Primeaux and Dr. Bergstedt. Ms. Ardoin did not have a close friendship with either witness; neither witness shared information about the case with Ms. Ardoin, and she specifically stated that she could reserve judgment as to the witnesses' veracity. Further, Ms. Ardoin acknowledged that law enforcement officers, including Detective Primeaux, are capable of lying, and the defense acknowledged that Dr. Bergstedt's testimony would not be refuted at trial.

Accordingly, the trial court did not abuse its discretion in denying Defendant's challenge for cause in reference to Ms. Ardoin.

C. Mr. Heath

Defendant contends that Mr. Heath should have been dismissed for cause because he said he would give more credence to the testimony of a police officer than that of a lay person. Defendant claimed that although Mr. Heath later stated that he could "probably" be fair and impartial, his body language indicated there was a problem. The State counters that Mr. Heath's initial statements were rehabilitated and that Mr. Heath's responses at voir dire reveal that he was able to be fair and impartial. The trial court denied the challenge for cause and noted Defendant's objection, stating, "I believe Mr. Heath was candid and indicated that he had a sense of respect for law enforcement from his upbringing."

> Generally, an individual who will unquestionably credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve as a juror. However, a mere relationship

23

between a prospective juror and a law enforcement officer is not of itself grounds to strike the juror for cause. Additionally, a prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. But, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render a judgement according to law may be reasonably implied.

*State v. Kang*, 02-2812, pp. 4-5 (La. 10/21/03), 859 So.2d 649, 652-53 (citations omitted).

A review of the voir dire transcript showed that Mr. Heath's initial response was based on a "feeling" rooted in his upbringing. However, he clarified that he realized that police officers were human and, as such, capable of lying and making mistakes. Mr. Heath first stated then maintained that he would be willing to put aside his feelings and evaluate the credibility of the witnesses on what they said rather than whether they were employed by law enforcement. Finally, Mr. Heath said that he would have no problem concluding that a police officer lied because he knew that they did lie. The record shows that the trial court did not abuse its discretion in denying Defendant's challenge for cause in reference to Mr. Heath.

## VI. Defendant's Motion for Mistrial

Defendant claims that the trial court erred in denying his motion for mistrial made after the State elicited testimony regarding hearsay statements of what R.T., Defendant's sister, said about Defendant's sleeping arrangements. The subject matter was excluded by a prior ruling on a motion in limine. Defendant contends that, under La.Code Crim.P. art. 775, the trial court should have declared a mistrial because introduction of hearsay statements constituted a legal defect that would make the verdict reversible as a matter of law. Further, Defendant maintains that prohibiting R.T. from testifying at trial did not undo the prejudice caused by the

State's transgression as the jury was still made aware that Defendant's sister had concerns about the situation.

The State responds that it did not elicit any hearsay information about the sleeping arrangements at Defendant's house. In fact, A.J. was instructed to refrain from repeating R.T.'s statements. The jury only learned that R.T. had concerns. The State submits that because any prejudice to Defendant in this case was not so severe as to deprive him of a fair trial, there was no abuse of the trial court's discretion in refusing to grant a mistrial.

The record shows that, on October 8, 2010, Defendant filed a motion seeking to bar R.T. from testifying at trial. In the motion, the defense alleged that the State intended to introduce its substantive evidence through the process of impeaching R.T. On October 12, 2010, the State filed an opposition to Defendant's motion, urging that no statute entitled a defendant to the wholesale exclusion of testimony presented by a State's witness. It contended that Defendant's argument was specious, as it relied completely on speculation since no one could accurately predict the substance of R.T.'s testimony. The trial court conducted a hearing on the matter prior to voir dire. After considering the argument by counsel, Defendant's motion was denied.

At trial, Defendant moved for a mistrial when, during the direct examination of L.J.'s mother, A.J., she stated that R.T. had seen something that made her concerned about L.J.'s relationship with her father. Thereafter, a bench trial occurred wherein the trial court gave the State the option of a mistrial or being prohibited from calling R.T. as a witness. The State chose to withdraw R.T. as a witness. The bench conference ended with defense counsel rejecting the trial court's offer to admonish the jury to disregard the remark about R.T. having concerns about the relationship between L.J. and Defendant.

"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771." La.Code Crim.P. art. 775

A hearsay statement by a witness at trial, even when specifically prohibited by the trial court, is not a basis for a mandatory mistrial under La.Code Crim.P. art. 770. Instead, the grant or denial of a defendant's motion for mistrial based upon a witness's remark is a matter of judicial discretion:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

La.Code Crim.P. art. 771.

The first circuit has discussed how prejudicial remarks made by witnesses are to be examined under the Louisiana Code of Criminal Procedure:

> Article 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized under articles LSA-C.Cr.P. arts. 770 or 771. Article 771 is concerned with prejudicial remarks made by persons other than the court, district attorney, or court officials, and provides that, if the remark is not within the mandatory provisions of article 770, the court may, in its discretion, grant a mistrial rather than admonish the jury to disregard the prejudicial remark. Mistrial is a drastic remedy. When the conduct does not fall within the mandatory

26

mistrial provisions, the judge has the sound discretion to determine whether the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. *State v. Narcisse*, 426 So.2d 118, 133 (La.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); *State v. Wright*, 441 So.2d 1301, 1306 (La.App. 1 Cir.1983).

*State v. Pooler*, 96-1794, pp. 29-30 (La.App. 1 Cir. 5/9/97), 696 So.2d 22, 44, *writ denied*, 97-1470 (La. 11/14/97), 703 So.2d 1288.

The supreme court has reviewed the refusal to grant a defendant's motion for mistrial based upon a witness's hearsay statement under a harmless error analysis:

> Defendant's hearsay objection to this statement was sustained, but his mistrial motion was denied. Defendant stresses that the trial court granted his pre-trial motion to exclude any reference to the hearsay statement regarding the two African-American males observed running from the van. Given defendant's admission that he and Jacobs abandoned the van in the Iberville Housing Development, even assuming this statement was hearsay, admitting it was harmless error, and the mistrial motion properly was denied. *See also State v. Prudholm*, 446 So.2d 729, 741 (La.1984) (officer's remark allegedly casting the accused as an associate of criminals was not prejudicial and did not impact the fairness of trial).

*State v. Bridgewater*, 00-1529, p. 3 (La. 1/15/02), 823 So.2d 877, 886 n.4, *cert. denied*, 537 U.S. 1227, 123 S.Ct. 1266 (2002). The harmless error analysis requires the examination of multiple factors:

> Confrontation errors are subject to a *Chapman* [*v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967)] harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. *Id*. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case". *Id*. at 684, 106 S.Ct. at 1438.

*State v. Wille*, 559 So.2d 1321, 1332 (La.1990).

The record shows that A.J. did not testify concerning the details of the offenses committed against L.J. The primary purpose of A.J.'s testimony was to explain how the case came to the attention of law enforcement. Further, T.W.'s testimony revealing why he became suspicious and how he later confirmed his suspicions was much more damaging to the defense than A.J.'s remark that Defendant's sister saw something that raised concerns about Defendant's relationship with L.J. Even though the trial court attempted to correct the error by barring R.T. from testifying for the State, it did not prohibit the defense from calling R.T. to clarify her statement to A.J. Furthermore, the lack of admonition to the jury that they were to disregard A.J.'s hearsay statement was directly attributable to the defense.

Thus, in light of the overall unimportance of A.J.'s testimony, the fact that another witness's suspicions were much more damaging to the defense, the relative immateriality of the statement when compared to T.W.'s testimony, the ability of the defense to call R.T. to clarify her remark to A.J., and the fact that the bulk of the material evidence was presented by the victim alone, we conclude that the error was harmless beyond a reasonable doubt. Thus, the trial court did not err in denying Defendant's motion for mistrial.

## VII. Excessiveness of Sentence

Defendant posits that his sentence of life without benefits is excessive under the circumstances. Defendant's prior convictions for simple robbery and aggravated burglary occurred in 1989 and 1991. Because Defendant was released in 2000, the ten-year cleansing period was still in effect at the time of the charged offenses: December 2008 and/or January 2009. Because nearly twenty years had lapsed since the commission of his prior offenses, Defendant insists there was no showing that there was a risk he would commit another crime, that Defendant had

a criminal disposition, or that Defendant required institutionalization. Defendant declares that the overcrowded prison system should be reserved for people who constitute a danger to the public and not for wrongly-convicted productive members of society. He asks this court to find that he qualifies for a downward-departure from the mandatory minimum penalty based on the exceptional circumstances of his case, the fact that he spent most of his adult life caring for his disabled son, his ability to maintain employment, his grief over the death of his son, and his lack of culpability. Defendant maintains that he is the true victim in the instant case.

The State responds that, as Defendant failed to comply with La.Code Crim.P. art. 881.1 by filing a motion to reconsider sentence, this court should limit its review of Defendant's sentences to bare excessiveness. Further, the State maintains that the trial court did not abuse its sentencing discretion as Defendant was a third felony offender and there is a strong presumption that the mandatory minimum sentence is constitutional. It also contends that a lesser sentence would deprecate the seriousness of the offenses.

Because Defendant failed to comply with La.Code Crim.P. art. 881.1, we will review Defendant's sentence for bare excessiveness. *See State v. Batiste*, 09-521 (La.App. 3 Cir. 12/9/09), 25 So.3d 981.

> This court has previously discussed the standard for reviewing excessive sentence claims:
>
>> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and

such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (citations omitted)(second alteration in original).

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789,*writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

*Id.* at 983.

At the January 5, 2011, sentencing hearing, the trial court found that Defendant was a third felony offender with two prior violent felonies and sentenced him to life imprisonment without benefit of probation, parole, and suspension of sentence for each conviction.[11] The record shows that the trial court sentenced Defendant under La.R.S. 15:529.1(A)(3)(b):

---

[11]Simple robbery, aggravated burglary, and forcible rape are all classified as crimes of violence. La.R.S. 14:2(B). Defendant was convicted of simple robbery in 1989 and aggravated burglary in 1991. See State's Exhibit 5. Further, forcible rape and aggravated incest are both classified as sex offenses. La.R.S. 15:541(23)(a).

(3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:

. . . .

(b) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Therefore, the life sentences the trial court imposed for Defendant's convictions constitute the statutory minimum possible penalty.

The Louisiana Supreme Court has held that the minimum sentences set forth in the Habitual Offender Law are constitutional.

The Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const. art. III, § I. Acting pursuant to this authority, the Legislature passed the Habitual Offender Law. This Court, on numerous occasions, has held this statute to be constitutional. Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional.

State v. Johnson, 97-1906, pp. 5-6 (La. 3/4/98), 709 So.2d 672, 675 (citations omitted).

Defendant's sentences of life in prison without benefits are not excessive.

## DECREE

Defendant's convictions and sentences are affirmed.

## AFFIRMED.

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.